UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| ANH TUYET THAI, | Case No.: 23-cv-639-BLM |
|---|---|
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REVERSING AND REMANDING FOR FURTHER PROCEEDINGS** |
| v. | |
| KILOLO KIJAKAZI, Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Anh Tuyet Thai ("Plaintiff") brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of her application for disability benefits during the relevant period by a second administrative law judge ("ALJ") pursuant to a prior court remand order. Anh Thai v. Berryhill, 18-cv-2647-JAH-RBM (S.D. Cal. Aug. 13, 2020) ("Thai I"). Currently before the Court is Plaintiff's Motion for Summary Judgment ("Motion"), Defendant's Opposition Brief to Plaintiff's Motion for Summary Judgment ("Oppo."), and Plaintiff's Reply in Support of Motion for Summary Judgment ("Reply"). ECF Nos. 12, 14, 15. After careful consideration of the pleadings and supporting documents, this Court **GRANTS** Plaintiff's Motion and **REVERSES** the Commissioner's decision and **REMANDS** for further proceedings in accordance with this order.

**PROCEDURAL BACKGROUND**

On March 29, 2013, Plaintiff filed an application for supplemental social security income alleging disability beginning April 1, 2000. Administrative Record ("AR") 22, 186-194. On October

25, 2013, the claim was initially denied, and denied upon reconsideration on March 7, 2014. AR 22, 121-140. On April 23, 2014, Plaintiff filed a written request for hearing. AR 22, 141. On March 18, 2016, an ALJ conducted a hearing [AR 49-85] and issued a written decision on July 19, 2017. AR 19-40. On September 4, 2018, the Social Security Administration Appeals Council issued a partially favorable decision but ultimately found Plaintiff not disabled. AR 4-13.

On November 19, 2018, Plaintiff filed an appeal to this Court alleging the Commissioner had erred in its denial of benefits to Plaintiff. Thai I, ECF No. 1. On December 13, 2019, the Commissioner filed an *ex parte* application to remand the action to the Social Security Administration for further proceedings to "re-evaluate Plaintiff's residual functional capacity [("RFC")] as well as her ability to perform her past relevant work and/or other work existing in the national economy." Thai I, ECF No. 17; AR 656. On January 13, 2020, District Judge John A. Houston granted the Commissioner's *ex parte* motion and remanded the action for further proceedings regarding Plaintiff's RFC and her ability to do work existing in the economy. Thai I, ECF No. 18; AR 655.

On August 20, 2020, the Social Security Appeals Council instructed the ALJ to conduct another hearing in accordance with District Judge Houston's January 13, 2020 Order. AR 650-651. The ALJ conducted three hearings between May 10, 2022 and December 1, 2022. AR 558-600. On February 1, 2023, the ALJ issued a decision finding Plaintiff was not disabled. AR 532-557. This appeal followed. ECF No. 1 ("Thai II").

## **THAI II ALJ DECISION**

On February 1, 2023, the ALJ issued a written decision wherein he found Plaintiff was not disabled under the Social Security Act. AR 535-547. At step one, the ALJ found that "[t]he [Plaintiff] has not engaged in substantial gainful activity since the date of application, March 29, 2013." AR 538. At step two, the ALJ found the Plaintiff had "the following severe impairments: major depressive disorder, anxiety, insomnia, and polymyalgia rheumatica[.]" Id. The ALJ does not mention fibromyalgia at step two. Id.

At step three, the ALJ found that "[Plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in

20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." Id. The ALJ found that Plaintiff has the RFC to "perform medium work as defined in 20 CFR 416.967(c) except [Plaintiff] is limited to understanding, remembering, and carrying out simple, routine, repetitive tasks with brakes [sic] needed every two hours." Id. at 540. Plaintiff is "further limited to no interaction with the general public, and to occasional work related, non-personal, non-social interaction with coworkers and supervisors involving no more than a brief exchange of information or hand off." Id. "[Plaintiff] cannot perform highly time pressure [sic] tasks, such that [Plaintiff] is limited to generally goal oriented work, not time sensitive or strict production quotas" and "Plaintiff is limited to a low stress environment where there are few workplace changes, and the [Plaintiff] has minimal decision-making capability." Id. at 540-41. The ALJ notes during his step three analysis that the Plaintiff's treating physician, Dr. James Grisolia, opined that "the [Plaintiff] is fully disabled on a permanent basis indicating that the most overwhelming problem is her severe depression, which is energizing from her fibromyalgia[.]" AR 543.

At step four, the ALJ found that "[Plaintiff] has no past relevant work." AR 545. At step five, the ALJ concluded that "[p]rior to January 30, 2017, the date the [Plaintiff]'s age category changed, [] there were jobs that existed in significant numbers in the national economy that the [Plaintiff] could have performed[.]." Id. at 546.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; see also Miner v. Berryhill, 722 Fed. Appx. 632, 633 (9th Cir. 2018) (We review the district court's decision de novo, disturbing the denial of benefits only if the decision "contains legal error or is not supported by substantial evidence.") (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)).

Substantial evidence is "more than a mere scintilla but may be less than a preponderance." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021) (quoting Molina v. Astrue,

674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation marks and citations omitted), *superseded by regulation on other grounds*. It is relevant evidence that a reasonable person might accept as adequate to support a conclusion after considering the entire record. Id. See also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "In determining whether the Commissioner's findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Laursen v. Barnhart, 127 Fed. Appx. 311 (9th Cir. 2005) (quoting Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. See Ahearn, 988 F.3d at 1115-1116 (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)). This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. Id. ("[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," and "we reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole") (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) and Molina, 674 F.3d 1110-1111 (9th Cir. 2012).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Miner, 722 Fed. Appx. at 633. Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court also may remand the matter to the Social Security Administration for further proceedings. Id.

## DISCUSSION

Plaintiff's first argument is that the ALJ in Thai II exceeded the mandate of United States District Judge John A. Houston's January 13, 2020 remand order and failed to follow the law of the case set forth in the August 20, 2020, Appeals Council's order. Motion at 2-3. Next, Plaintiff argues that "the [Thai II] ALJ never acknowledged or discussed fibromyalgia[1] in determining

---

[1] Fibromyalgia is a medical condition defined by the presence of chronic widespread pain,

the Plaintiff's RFC, or the treatment by the half dozen specialists during the relevant period." Id. at 7; see also Reply at 2. Plaintiff states that "UCSD doctors specializing in rheumatology had been treating Plaintiff since 2011 and initially diagnosed Plaintiff with fibromyalgia as the major cause of chronic pain." Motion at 11. Plaintiff cites Benecke v. Berryhill, 379 F.3d 587, 594 n.4 (9th Cir. 2004), which explains that a rheumatologist's specialized knowledge is "particularly important with respect to disease such as fibromyalgia that is poorly understood within much of the medical community" and "[e]ach rheumatologist's opinion is given greater weight than those of other physicians because it is an 'opinion of a specialist about medical issues related to his or her area of specialty.'" Id. Plaintiff also cites Revels v. Berryhill, 874 F.3d 648, 655-56 (9th Cir. 2017), which explains that an ALJ must evaluate the medical record in light of the unique characteristics of fibromyalgia pursuant to Social Security Ruling ("SSR") 12-2P, and consider a longitudinal record whenever possible. Motion at 17.

Defendant argues that the ALJ in Thai II complied with the Court's prior order because, "the ALJ here reconsidered the evidence, including updated records, reassessed Plaintiff's RFC, and issued a new decision, which complied with both the updated regulation regarding English proficiency and the Appeals Council order vacating and remanding the case to the ALJ." Oppo. at 3-4. Defendant further argues that "Plaintiff fails to show that fibromyalgia was a medically determinable impairment, and, even if it were, she points to no credible evidence establishing she was more limited than the ALJ found." Oppo. at 5. Defendant further argues that "[n]one of the evidence to which Plaintiff points shows that her doctors diagnosed fibromyalgia based on the required criteria set forth in 12-2p for establishing fibromyalgia as a medically determinable impairment and thus Plaintiff cannot show any harmful error with respect to that condition." Id. at 6.

---

fatigue, waking unrefreshed, cognitive symptoms, lower abdominal pain or cramps, and depression. Wolfe F, Clauw DJ, Fitzcharles MA, Goldenberg DL, Häuser W, Katz RL, et al., (December 2016), "2016 Revisions to the 2010/2011 fibromyalgia diagnostic criteria", Seminars in Arthritis and Rheumatism. Other symptoms include insomnia and a general hypersensitivity. Wu YL, Chang LY, Lee HC, Fang SC, Tsai PS (May 2017), "Sleep disturbances in fibromyalgia: A meta-analysis of case-control studies", Journal of Psychosomatic Research.

### A. Law of the Case

The Court finds that the ALJ did not violate the law of the case doctrine as he complied with Judge Houston's January 13, 2020 remand order. AR 655. The Ninth Circuit has established that the law of the case doctrine generally prohibits a court from considering an issue that has previously been decided by that same court or a higher court in the same case. See Stacy v. Colvin, 825 F.3d 563, 567 (9th Cir. 2016) (citing Hall v. City of Los Angeles, 697 F.3d 1059, 1067 (9th Cir. 2012)). Additionally, "[t]he rule of mandate is similar to, but broader than, the law of the case doctrine." Id. at 568 (quoting United States v. Cote, 51 F.3d 178, 181 (9th Cir. 1995)). The district court may "decide anything not foreclosed by the mandate." Id. (quoting Hall, 697 F.3d at 1067 (9th Cir. 2012)).

The court in Thai I simply granted the Commissioner's stipulated *ex parte* motion for voluntary remand without making any specific findings regarding Plaintiff's application or disability status. AR 655. Judge Houston's order required the Defendant to re-evaluate Plaintiff's RFC and ability to perform work existing in the economy. Id. The scope of this broad remand order necessarily included a reconsideration of all relevant evidence in the record including Plaintiff's medical and vocational records and, therefore, was not limited to a narrow legal issue. See 20 C.F.R. § 404.1545(a)(1). Thus, the ALJ on remand did not consider an issue that had been previously decided and therefore did not violate the law of the case. See Stacy, 825 F.3d 563, 567 (9th Cir. 2016) (citing Hall v. City of Los Angeles, 697 F.3d 1059, 1067 (9th Cir. 2012)).

### B. Failure to Discuss Fibromyalgia

The ALJ failed to discuss Plaintiff's fibromyalgia during either the step two or step three analysis. AR 538-540. As a result, the Court does not know whether the ALJ considered Plaintiff's fibromyalgia and if so, what decision he made regarding its severity and why. Nonetheless, the Court will consider the standard of review for both step two and step three determinations.

At step two of the evaluation process, an ALJ must consider the medical severity of a plaintiff's impairments and if the ALJ finds that the plaintiff does not have a severe medically determinable impairment or combination of impairments satisfying the duration requirements, the ALJ will find that the plaintiff is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); see Buck v.

Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017).  The Ninth Circuit recently explained that "[e]ach time we have reviewed an ALJ's step-two analysis, we have reiterated the corollary principles that claimants need only make a de minimis showing for the analysis to proceed past this step and that properly denying a claim at step two requires an unambiguous record showing only minimal limitations." Glanden v. Kijakazi, No. 22-35632, 2023 WL 7860717, at *4 (9th. Cir. Nov. 16, 2023).

In 20 C.F.R. Part 404, Subpart P, Appendix 1, the Commissioner has identified certain impairments presumed to be of sufficient severity to prevent the performance of work.  20 C.F.R. § 416.925(a); see also Misty F. v. Comm'r of Soc. Sec., 2022 WL 101887 at *2 (W.D. Wash., Jan. 10, 2022) ("[t]he listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.'") (quoting Sullivan v. Zebley, 493 U.S. 521, 532 (1990)).  If Plaintiff's impairments are not one of the identified impairments, then at step three of the evaluation process, the ALJ must determine whether one or more of a claimant's impairments meet or medically equal one of the listed impairments.  20 C.F.R. § 416.920(a)(4)(iii).  If a claimant has an impairment that meets or equals a listed impairment, disability is presumed, and benefits are awarded.  20 C.F.R. § 416.920(d).  Plaintiff bears the burden of proof at step three.  See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  A mere diagnosis does not establish disability.  See Key v. Heckler, 754 F.2d 1545, 1549-50 (9th Cir. 1985).  "To meet a listing, an impairment 'must meet all of the specified medical criteria.'  To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment[.]" Misty F., 2022 WL 101887 at *2 (quoting Sullivan, 493 U.S. at 530 and Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999)) (citing 20 C.F.R. § 416.926 (a)).  If the ALJ determines at step three that a claimant's impairment does not meet a listing, the ALJ must provide adequate support for that decision.  Lewis v. Apfel, 236 F.3d 503 at 514 (9th Cir. 2001).  This may be accomplished by adequately discussing the evidence supporting the step three determination anywhere in the decision.  See Patricia C. v. Saul, 2020 WL 4596757 at *14 (S.D. Cal., Aug. 11, 2020) (citing Kennedy v. Colvin, 738 F.3d

1172, 1178 (9th Cir. 2013)).

Here, at step two, the ALJ found that Plaintiff had four severe impairments: "major depressive disorder, anxiety, insomnia, and polymyalgia rheumatica." AR 538. The ALJ stated that these "impairments significantly limit [Plaintiff's] ability to perform basic work activities." Id. The ALJ then discussed Plaintiff's carpal tunnel syndrome, pain complaints, heart disease, and headaches and found that none of them were severe. Id. The ALJ did not mention fibromyalgia or indicate that it was included in or eliminated by the severe polymyalgia rheumatica impairment. Id. At step three, the ALJ found that "[Plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." AR 538. In reaching this conclusion, the ALJ discussed Plaintiff's polymyalgia rheumatica and listing 14.09 as well as her mental impairments. AR 539-40. The ALJ did not mention or discuss Plaintiff's fibromyalgia or the associated SSR 12-2P. Id.

In 2012, the SSA issued a ruling recognizing fibromyalgia as a valid "basis for a finding of disability." SSR 12-2P, at 2. The ruling provides two sets of criteria for diagnosing the condition, based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria. Id. Pursuant to the first set of criteria, a person suffers from fibromyalgia if:

> (1) she has widespread pain that has lasted at least three months (although the pain may fluctuate in intensity and may not always be present); (2) she has tenderness in at least eleven of eighteen specified points on her body; and (3) there is evidence that other disorders are not accounting for the pain.

Id. at 2–3. Pursuant to the second set of criteria, a person suffers from fibromyalgia if:

> (1) she has widespread pain that has lasted at least three months (although the pain may fluctuate in intensity and may not always be present); (2) she has experienced repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) there is evidence that other disorders are not accounting for the pain.

Id. at 3.

"Fibromyalgia is 'a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue.'" Revels v. Berryhill, 874 F.3d 648, 656 (9th Cir. 2017) (quoting Benecke v. Barnhart, 379 F.3d 587, 589 (9th Cir. 2004)). "Typical symptoms include 'chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue.'" Id. (quoting Benecke, 379 F.3d at 590). "What is unusual about the disease is that those suffering from it have muscle strength, sensory functions, and reflexes that are normal." Id. (internal quotation marks and alteration omitted). "Their joints appear normal, and further musculoskeletal examination indicates no objective joint swelling." Id. (internal quotation marks omitted). "Indeed, there is an absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." Id. (internal quotation marks and alteration omitted). "The condition is diagnosed 'entirely on the basis of the patients' reports of pain and other symptoms.'" Id. (quoting Benecke, 379 F.3d at 590). "[T]here are no laboratory tests to confirm the diagnosis." Id. (alteration in original) (quoting Benecke, 379 F.3d at 590).

### 1. There is Substantial Evidence in the Record Establishing Fibromyalgia as One of Plaintiff's Impairments.

Initially, the record clearly establishes that Plaintiff suffers from fibromyalgia and that it is an impairment the ALJ needed to consider.

On November 17, 2019, Plaintiff filed her Motion for Summary Judgment arguing, *inter alia*, that the Thai I ALJ failed to evaluate Plaintiff's fibromyalgia under controlling Ninth Circuit precedent and SSR 12-2P. Plaintiff's Motion for Summary Judgment at 3-14, Anh Thai v. Berryhill, 18-cv-2647-JAH-RBM (S.D. Cal. Nov. 17, 2020), ECF No. 16. She argued that "the ALJ failed to heed the instructions of SSR 12-2P concerning fibromyalgia and corresponding guidelines of this Court in Benecke v. Barnhart, 379 F.3d 587 (9th Cir. 2004) and Revels v. Berryhill, 874 F.3d 648 (9th Cir. 2017)." Id. at 3. Similarly, she argued that "[t]he ALJ improperly adopted the opinions of a general internist [] in determining that plaintiff had '*polymyalgia rheumatica*' [] when all of the treating specialists never mentioned *polymyalgia rheumatica* and repeatedly diagnosed fibromyalgia[.]" Id. at 6. She explained that "UCSD doctors specializing in

rheumatology and [who] had been treating plaintiff since 2011 [] diagnosed plaintiff with fibromyalgia as the major cause of chronic pain[.]" Id. at 7. She concluded by correctly stating that "[i]n fact, the ALJ never even mentioned UCSD's diagnosis of fibromyalgia." Id. at 14.

Based upon Plaintiff's motion and with no further briefing, counsel for the Commissioner agreed that the ALJ committed error, and on December 13, 2019, filed an unopposed *Ex Parte* Motion for Voluntary Remand under Sentence Four of 42 U.S.C. § 405(g) and Entry of Judgment. AR 656. The motion states "[u]pon remand, the agency will reevaluate Plaintiff's residual functional capacity as well as her ability to perform past relevant work and/or other work existing in the national economy." Id. District Judge Houston granted the unopposed motion and ordered the agency to reevaluate Plaintiff's RFC and her ability to perform work. AR 655. While not explicitly mentioned in the Commissioner's motion to remand or Judge Houston's order, the Court finds that the ALJ was on notice that Plaintiff had been diagnosed with fibromyalgia, and that he needed to conduct an evaluation of Plaintiff's fibromyalgia-related symptoms pursuant to SSR 12-2P.

The administrative record also contains numerous medical records and opinions identifying the severity and longevity of Plaintiff's fibromyalgia. Many of the records and opinions are from rheumatologists who treated Plaintiff for extended periods of time. Such evidence is important and persuasive for fibromyalgia claims. See Revels, 874 F.3d at 664 (quoting Benecke, 379 F.3d at 594 n.4) (a rheumatologist's specialized knowledge is "particularly important with respect to a disease such as fibromyalgia that is poorly understood within much of the medical community.").

### a. University of California at San Diego ("UCSD") Medical Center, Susan Sweeney, M.D. and Rheumatologists Hong Yang, M.D. and Quyen Huynh, M.D.

On May 30, 2012, attending physician Susan Sweeney, M.D. ("Dr. Sweeney") and rheumatologist fellow Hong Yang, M.D. ("Dr. Yang") treated Plaintiff for "joint pain and body pain" and found Plaintiff to have "[m]ultiple tender points" in her chest, back, upper extremities,

and lower extremities that were "diffusely tender." AR 357. Dr. Sweeny prescribed Cymbalta[2] for Plaintiff's pain, diagnosed her with arthralgia[3], and ordered a multitude of imaging and lab tests be completed to determine the cause of Plaintiff's arthralgia. AR 360. Dr. Yang concluded that Plaintiff's arthralgia was caused by "chronic pain syndrome (FM [fibromyalgia]) which often [sic] associated with Migraine HA [headaches], poor sleep and multiple tenderness that she has." Id.

On July 25, 2012, Plaintiff attended a follow-up appointment with rheumatologist Quyen Huynh, M.D. ("Dr. Huynh") who diagnosed her with "somatization disorder, fibromyalgia, history of [positive] ANA7 and CTS (carpal tunnel syndrome) [and] presents for follow up here b[ecause] of generalized pain." AR 361. Dr. Huynh further found that Plaintiff experienced "lots of pain" and found her to have "+8/10 tender points." Id. He also found that Plaintiff was only sleeping "1-2 hours a night." Id. Dr. Huynh prescribed Cymbalta for continued treatment of Plaintiff's pain. Id. After Plaintiff's examination by Dr. Huynh, attending rheumatologist at UCSD, Kenneth Kalunian, M.D. ("Dr. Kalunian"), concurred with Dr. Huynh's July 25, 2012 assessment and treatment plan for Plaintiff. AR 363.

On August 29, 2012, Plaintiff returned to Dr. Huynh for a follow up appointment wherein he found Plaintiff's pain "appeared to be [] a manifestation of fibromyalgia" while ruling out auto inflammatory arthritis as the cause of Plaintiff's pain. AR 363. Dr. Huynh found Plaintiff to have ">18/18 classical tender points" and concluded that "[o]ur clinical suspicion for an autoimmune arthritis is very low in this patient and her primary complaints are likely to be more related to her fibromyalgia." AR 365. Similarly, Plaintiff's x-rays and blood tests supported Dr. Huynh's conclusion as they showed no indication of injury aside from minor calcific tendinitis in Plaintiff's right shoulder. AR 366-372. Dr. Huynh increased Plaintiff's dosage of Cymbalta to 30mg as her

---

[2] Cymbalta is a medication used to treat depressive disorder, generalized anxiety disorder, fibromyalgia, neuropathic pain and central sensitization. "Duloxetine", Monograph, The American Society of Health-System Pharmacists.

[3] Arthralgia is a symptom of injury, infection, illness (in particular arthritis), or an allergic reaction to medication. James R Philp, "Allergic Drug Reactions - Systemic Allergic Drug Reactions", Clinical Methods - The History, Physical, and Laboratory Examinations, September 20, 2007.

pain had worsened. AR 365. Dr. Kalunian again concurred with this assessment and treatment plan for Plaintiff. Id.

### b. Treatment by Neurology Specialist James Grisolia, M.D.

On July 27, 2013, James Grisolia, M.D. ("Dr. Grisolia") examined Plaintiff and found that "the [Plaintiff] has a fibromyalgia syndrome" and her depression is "energizing her fibromyalgia." AR 421. His examination of Plaintiff showed she had "neck, low back, and bilateral shoulder pain, which has been gradually progressive over the last 10 years" and "[t]here is weakness in all four extremities, which appears to be due to pain[.]" Id. Dr. Grisolia also found that she "reacts to touch and pain in all extremities." Id.

On June 24, 2014, during a follow up appointment, Dr. Grisolia stated "[t]he [Plaintiff] was last seen 1 year ago, and now returns with continued diffuse pain most severe in the shoulders and upper extremities." AR 498. He concluded that Plaintiff suffers from "fibromyalgia, myalgia and myositis" and Plaintiff "has very diffuse pain which includes a significant headache component with memory loss." Id. He further states that "all deficits are permanent." Id. Plaintiff suffered weight loss of over 15lbs from her prior visit the year before, weighing only 105lbs. Id. Dr. Grisolia also indicated that Plaintiff's medications were ineffective in reducing her pain and symptoms. Id.

On February 16, 2016, three years after Plaintiff's first fibromyalgia diagnosis, Dr. Grisolia diagnosed Plaintiff with "[f]ibromyalgia [], [t]he patient has very diffuse pain which includes a significant headache component with memory loss. The patient is unable to perform activities requiring standing bimanual use of the hands or any cognitive function" while reaffirming that "it is anticipated that all deficits are permanent." AR 500. He found that Plaintiff had "diffuse pain most severe in the shoulders in both upper extremities, [] develops more severe cramping in both calves and feet, day and night" and "continues with cognitive difficulties[.]" Id.

As summarized above, there is substantial evidence in the record from treating rheumatologists as well as the prior administrative and court proceedings establishing that Plaintiff had fibromyalgia. Despite this evidence, the ALJ did not discuss fibromyalgia at either

pain had worsened. AR 365. Dr. Kalunian again concurred with this assessment and treatment plan for Plaintiff. Id.

### b. Treatment by Neurology Specialist James Grisolia, M.D.

On July 27, 2013, James Grisolia, M.D. ("Dr. Grisolia") examined Plaintiff and found that "the [Plaintiff] has a fibromyalgia syndrome" and her depression is "energizing her fibromyalgia." AR 421. His examination of Plaintiff showed she had "neck, low back, and bilateral shoulder pain, which has been gradually progressive over the last 10 years" and "[t]here is weakness in all four extremities, which appears to be due to pain[.]" Id. Dr. Grisolia also found that she "reacts to touch and pain in all extremities." Id.

On June 24, 2014, during a follow up appointment, Dr. Grisolia stated "[t]he [Plaintiff] was last seen 1 year ago, and now returns with continued diffuse pain most severe in the shoulders and upper extremities." AR 498. He concluded that Plaintiff suffers from "fibromyalgia, myalgia and myositis" and Plaintiff "has very diffuse pain which includes a significant headache component with memory loss." Id. He further states that "all deficits are permanent." Id. Plaintiff suffered weight loss of over 15lbs from her prior visit the year before, weighing only 105lbs. Id. Dr. Grisolia also indicated that Plaintiff's medications were ineffective in reducing her pain and symptoms. Id.

On February 16, 2016, three years after Plaintiff's first fibromyalgia diagnosis, Dr. Grisolia diagnosed Plaintiff with "[f]ibromyalgia [], [t]he patient has very diffuse pain which includes a significant headache component with memory loss. The patient is unable to perform activities requiring standing bimanual use of the hands or any cognitive function" while reaffirming that "it is anticipated that all deficits are permanent." AR 500. He found that Plaintiff had "diffuse pain most severe in the shoulders in both upper extremities, [] develops more severe cramping in both calves and feet, day and night" and "continues with cognitive difficulties[.]" Id.

As summarized above, there is substantial evidence in the record from treating rheumatologists as well as the prior administrative and court proceedings establishing that Plaintiff had fibromyalgia. Despite this evidence, the ALJ did not discuss fibromyalgia at either

step two or step three.[4] This constitutes legal error. See Lorenzo v. Saul, 2020 WL 4732063, at *2 (S.D. Cal. Aug. 14, 2020) (failure to discuss a diagnosis supported by evidence in the record is error).

### 2. The ALJ Failed to Evaluate Fibromyalgia Pursuant to SSR 12-2P

In light of the aforementioned evidence and diagnoses of fibromyalgia, the ALJ was required to evaluate Plaintiff's fibromyalgia in accordance with SSR 12-2P. See Revels, 874 F.3d at 662 ("In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P and Benecke [379 F.3d 587]. The failure to do so is error[.]").

Defendant argues that the ALJ did not err because Plaintiff has not established that "fibromyalgia was a medically determinable impairment." Oppo. at 9. Defendant asserts that Plaintiff has not established that "her doctors diagnosed fibromyalgia based on the criteria set forth in 12-2P." Id. at 10. Defendant's argument is misplaced as the law requires the ALJ to evaluate Plaintiff's fibromyalgia using the SSR 12-2P criteria (Revels, 874 F.3d at 662) and the ALJ did not do so. In addition, contrary to Defendant's argument, Plaintiff did identify evidence establishing each criterion.

#### a. SSR 12-2P's First Criterion

Pursuant to SSR 12-2P, under either the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia or the 2010 American College of Rheumatology Preliminary Diagnostic Criteria, the first criterion requires that a plaintiff have widespread pain that has lasted at least three months (although the pain may "fluctuate in intensity and may not always be present"). SSR 12-2P at 2.

---

[4] The ALJ mentions fibromyalgia during his step four analysis but only with regards to the fact that Dr. Grisolia found Plaintiff had "severe depression, which is energizing from her fibromyalgia." AR 543. While not clear, the ALJ appears to give little weight to Dr. Grisolia's opinion based on the depression diagnosis, not the fibromyalgia. Id. The ALJ also does not address the fibromyalgia diagnoses and opinions of Drs. Sweeny, Yang, Huynh and Kalunian during his step four analysis. Id. at 540-45.

Plaintiff argues this criterion is satisfied as "the medical records establish that the [Plaintiff] met all criteria for a finding of fibromyalgia" because "her treating physicians have diagnosed symptoms of fibromyalgia since June 2012." Motion at 18; Reply at 2. Defendant argues this criterion is not met as "[n]one of the evidence to which Plaintiff p oints [sic] shows that her doctors diagnosed fibromyalgia based on the required criteria set forth in 12-2p for establishing fibromyalgia as a medically determinable impairment[,]" but does not provide any specific argument to contradict Plaintiff's claim that the first criterion is met. Oppo. at 6.

The record is replete with objective medical evidence by Plaintiff's treating physicians, including rheumatologists, indicating that Plaintiff experienced widespread pain that lasted at least three months. Dr. Sweeney and Dr. Yang indicated in their treatment notes in May 2012 that Plaintiff was experiencing severe pain. AR 357-360. In July 2012, Dr. Huynh noted that Plaintiff was experiencing significant amounts of generalized pain through all her extremities and body. AR 361-363. In August 2012, Dr. Huynh treated Plaintiff for generalized pain, conducted laboratory testing and x-ray imaging to eliminate other causes, and concluded that fibromyalgia was the cause of Plaintiff's pain. AR 363-372. Between 2013 and 2016, Dr. Grisolia treated Plaintiff for generalized pain, and he diagnosed fibromyalgia as the cause of Plaintiff's pain. AR 421, 498, 500. Finally, Dr. Sweeney noted that Plaintiff had been experiencing pain for over 10 years prior to her examination in 2013. AR 360. Plaintiff's medical records show that she was treated for generalized pain for much longer than three months. Therefore, Plaintiff has presented evidence satisfying SSR 12-2P's first criterion for both the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria.

### b. SSR 12-2P's Second Criterion

Pursuant to SSR 12-2P, under the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia, a plaintiff satisfies the second criterion if she has tenderness in at least eleven of eighteen specified points on her body. SSR 12-2P at 2. The second criterion of SSR 12-2P is satisfied pursuant to the 2010 American College of Rheumatology Preliminary Diagnostic Criteria if the plaintiff has experienced repeated manifestations of six or more

fibromyalgia symptoms, signs, or co-occurring conditions, "especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." Id. at 3.

Plaintiff argues this criterion is satisfied as her treating physicians "have identified more than eleven specific tender points in accordance with SSR 12-2P's first set of criteria, as well as manifestations of six or more fibromyalgia symptoms such as fatigue, cognitive and memory problems ("fibro fog") under the second set of criteria." Motion at 18; Reply at 3. Plaintiff further argues that "[o]n examination, Dr. Huynh did indicate the location of a number of trigger points, which should establish fibromyalgia under the first set of SSR 12-2P criteria: MUSCULOSKELETAL: >18/18 classical tender points [and] pain with palpation at bilateral upper and lower extremities." Reply at 4. Regarding SSR 12-2P's second set of criteria, Plaintiff argues that "Dr. Yang, Sweeny and Quyen Huynh's findings about the Plaintiff's mental status also satisfy the second set of criteria, including 'fibro fog,' or mental illness, as follows: [] Migraine HA [headaches], [and] somatization disorder." Reply at 4; AR 356, 360-361. Defendant does not address the second sets of criteria in his opposition. See Oppo.

Regarding the second criterion in the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia, Plaintiff has identified evidence that she experienced at least eleven of eighteen specified points of tenderness on her body. Dr. Huynh found Plaintiff to have ">18/18 classical tender points" and concluded that "[o]ur clinical suspicion for an autoimmune arthritis is very low in this patient and her primary complaints are likely to be more related to her fibromyalgia." AR 365. Thus, Plaintiff satisfies the second criterion of the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia.

Pursuant to the 2010 American College of Rheumatology Preliminary Diagnostic Criteria, Plaintiff has shown that she experienced repeated manifestations of six or more fibromyalgia symptoms. Dr. Grisolia found that Plaintiff "has very diffuse pain which includes a significant headache component with memory loss." AR 498. Dr. Huynh also found that Plaintiff was only

sleeping "1-2 hours a night." AR 361. Dr. Sweeney found Plaintiff to have somatization disorder[5], Migraine HA [headaches], poor sleep, depression, and multiple tender points. AR 360. Plaintiff's non-rheumatologist treating physicians noted Plaintiff experienced anxiety, posttraumatic stress disorder, and generalized pain between 2012 and 2016. AR 377, 380, 382, 391, 394, 396, 423-424. Therefore, the Plaintiff satisfies the second criterion under the 2010 American College of Rheumatology Preliminary Diagnostic Criteria as she has manifestations of at least six or more fibromyalgia symptoms.

In conclusion, the Plaintiff identifies evidence satisfying the second criteria under both the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia and the 2010 American College of Rheumatology Preliminary Diagnostic Criteria.

### c. Plaintiff SSR 12-2P's Third Criterion

To satisfy SSR 12-2P's third criterion, a plaintiff must establish that there is evidence that other disorders are not accounting for the pain. SSR 12-2P at 3. Plaintiff does not specifically address the third criterion in her Motion or Reply, but does state that "Dr. Quyen Huynh assessed the [P]laintiff as suffering from fibromyalgia" and "Dr. Yang concluded that [P]laintiff suffered from: Chronic pain syndrome (FM fibromyalgia])[.]" Reply at 4. Defendant argues that "Plaintiff points to no evidence showing the doctors who diagnosed fibromyalgia ever ruled out other conditions, including the polymyalgia rheumatica that another doctor diagnosed." Oppo. at 6.

Here, there is evidence establishing this criterion. First, Plaintiff's treating rheumatologist, Dr. Huynh, identified fibromyalgia as the cause of Plaintiff's pain while ruling out carpal tunnel syndrome, shoulder injuries, arthritis, and other ailments as the cause of Plaintiff's pain symptoms. AR 365. Dr. Huynh's opinion is especially relevant as fibromyalgia is a rheumatic disease, and the Ninth Circuit has held that the opinions of treating rheumatologists carry more weight than the opinions of non-rheumatologist physicians when opining on fibromyalgia-related

---

[5] Somatic symptom disorder, also known as somatoform disorder, is defined by one or more chronic physical symptoms that coincide with excessive and maladaptive thoughts, emotions, and behaviors connected to those symptoms. Dimsdale, Joel E., "Somatic Symptom Disorder — Psychiatric Disorders", Merck Manuals Professional Edition., Sep. 1, 2022.

symptoms. See Revels, 874 F.3d at 664 (as fibromyalgia is a rheumatic disease, the opinion of a treating rheumatologist carries more weight than that of non-rheumatologists). Second, Plaintiff underwent x-ray testing and lab testing which revealed no other injury that could cause generalized pain over 18/18 tender points which supports a fibromyalgia diagnosis. AR 365-415. This evidence is especially persuasive as "[t]he condition is diagnosed 'entirely on the basis of the patients' reports of pain and other symptoms' " and "there are no laboratory tests to confirm the diagnosis." Revels, 874 F.3d at 656 (quoting Benecke, 379 F.3d at 590). Further, both Dr. Sweeney and Dr. Yang concluded that Plaintiff was likely suffering from fibromyalgia as the source of her pain symptoms. AR 360. Finally, Dr. Grisolia consistently diagnosed Plaintiff with fibromyalgia throughout the three-year duration of her treatment and consistently noted that Plaintiff was suffering from "very diffuse pain which includes a headache component with memory loss." AR 500.

As such, there was evidence indicating that the pain and other symptoms were caused by Plaintiff's fibromyalgia and that Plaintiff's treating doctors eliminated other medical causes for the pain. Plaintiff's treating doctors provided longitudinal evidence to establish the diagnosis and conducted other tests and examinations to exclude other causes. See Revels, 874 F.3d at 665.

### d. Polymyalgia Rheumatica and Listing 14.09

Defendant argues that the ALJ did not err, or any error was harmless, because the ALJ "accepted the polymyalgia rheumatica diagnosis and assessed it as a severe impairment (AR 538)." Oppo. at 11. Defendant asserts that the ALJ included limitations of "less than medium residual functional capacity" which addressed Plaintiff's fibromyalgia. Id.; see also AR 541-42.

Defendant's argument is without merit for a number of reasons. First, the ALJ never mentioned fibromyalgia or indicated that the fibromyalgia diagnosis and limitations were encompassed by the polymyalgia rheumatica diagnosis and limitations so any such argument is speculation. See Lorenzo, 2020 WL 4732063, at *2. Second, the ALJ's discussion of Plaintiff's polymyalgia rheumatica focuses on Plaintiff's shoulder pain [AR 539, 541] whereas the alleged fibromyalgia symptoms are more widespread and varied. Third, the elements of Listing 14.09

described by the ALJ [AR 539] are significantly different than the SSR 12-2P criteria. See Jackson v. Commissioner of Social Security Administration, 501 F.Supp.3d 708, 714-15 (D. Arizona 2020) (recognizing that polymyalgia rheumatica and fibromyalgia are distinct diagnoses and must be evaluated as separate impairments pursuant to the SSR).

### e. Conclusion

The Ninth Circuit, under both Benecke and Revels, has made clear that an ALJ must evaluate a Plaintiff's fibromyalgia-related symptoms pursuant to SSR 12-2P. Revels, 874 F.3d at 662. "In evaluating whether a claimant's residual functional capacity renders them disabled because of fibromyalgia, the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P[.] The failure to do so is error." Id. Here, the ALJ failed to consider Plaintiff's fibromyalgia symptoms and failed to address the required SSR 12-2P criteria despite significant evidence of fibromyalgia-related symptoms and fibromyalgia diagnoses over an extended period of time. These failures are legal errors rendering the ALJ's decision flawed.

### 3. Harmless Error Analysis

Having concluded the ALJ erred by not considering Plaintiff's treating rheumatologist physician's opinions, and by not analyzing Plaintiff's fibromyalgia-related symptoms pursuant to SSR 12-2P, the Court must now determine whether such error was harmless. "[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.' " Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting Carmickle, 533 F.3d at 1162). In assessing whether an error is harmless, the court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." Id.

Here, the ALJ's errors were not harmless. As discussed above, the ALJ's errors impacted his conclusions at steps two, three, four, and five and rendered his conclusions about Plaintiff's RFC and her ability to perform available work in the national economy invalid. See Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (only mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless); Marshall v. Berryhill, 2017 WL 2060658 at *15 (S.D. Cal. May 12, 2017) (quoting

Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective.").

### 4. Appropriate Remedy

The parties disagree over the proper remedy should the Court find the ALJ committed harmful legal error. Plaintiff urges the Court to remand for an immediate award of benefits. Motion at 26-28. Plaintiff contends that the record has been fully developed, and that under the "credit as true rule," the medical evidence and opinions of her treating physicians regarding her fibromyalgia compels the conclusion that Plaintiff is disabled under the meaning of the Social Security Act. Id. at 27. Defendant argues that inconsistencies and ambiguities in the record render the credit as true rule inapplicable, and therefore a remand, if required, should be for further proceedings. Oppo. at 17-18.

The decision whether to remand for further proceedings or simply to award benefits is within the discretion of the court. See Aida I. v. Saul, 2020 WL 434319, at *5 (S.D. Cal., Jan. 28, 2020) (noting that "[t]he law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court.") (citing Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); and Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)). Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. See Gerde v. Berryhill, 717 Fed. Appx. 674, 677 (9th Cir. 2017) ("[r]emand for further administrative proceedings to consider Dr. Alvord's opinion and the lay witness testimony is the proper remedy because enhancement of the record would be useful.") (citing Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)). On the other hand, if the record has been fully developed such that further administrative proceedings would serve no purpose "the district court should remand for an immediate award of benefits." Benecke, 379 F.3d at 593. A remand for an immediate award of benefits is appropriate only in rare circumstances. Id.

Here, based on the record before it, the Court concludes that the rare circumstances that may result in a direct award of benefits are not present. See Leon v. Berryhill, 880 F.3d 1041, 1044 (9th Cir. 2017) ("[a]n automatic award of benefits in a disability benefits case is a rare and

prophylactic exception to the well-established ordinary remand rule"); see also Howland v. Saul, 804 Fed. Appx. 467, 471 (9th Cir. 2020) (same). As discussed herein, the ALJ erred by not discussing fibromyalgia pursuant to SSR 12-2P. However, the record before this Court is nonetheless ambiguous regarding how Plaintiff's fibromyalgia will affect the step two through five determinations, including her RFC, and how vocational experts will evaluate what jobs in the national economy Plaintiff may be able to perform given her revised RFC. Thus, the Court finds further administrative proceedings will serve a meaningful purpose. See Garrison v. Colvin, 795 F.3d 995, 1019 (quoting Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)) ("If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded.").

Therefore, this Court **REVERSES** the ALJ's decision and **REMANDS** for further proceedings to address the errors noted in this Order.[6]

**IT IS SO ORDERED**.

Dated: 12/18/2023

Hon. Barbara L. Major
United States Magistrate Judge

---

[6] Because the Court is remanding for further development and consideration of the record, the Court will not rule on Plaintiff's remaining arguments. See Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); see also Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); Newton v. Colvin, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments."); and Berenisia Madrigal v. Saul, 2020 WL 58289, at *7 (E.D. Cal., Jan. 6, 2020) ("Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments that the ALJ erred in rejecting medical opinion evidence and failing to develop the record).